Whaley, Judge,
delivered the opinion of the court:
On November 6, 1933, the plaintiffs entered into a contract with the defendant whereby they agreed to furnish
all labor and materials and perform all work required for resurfacing and repairing the roofs of the Navy and Munitions Buildings located on Constitution Avenue * * * for the consideration of Sixteen Thousand Nine Hundred and Three ($16,903.00) Dollars, together with Alternate Bids at the following Unit Prices: * * *
(B) Twenty-eight cents ($0.28) per lineal foot for new gutters,
in accordance with the specifications, schedules, and drawings. There were other items of work which are not material to the issue.
Work was commenced on the contract in the latter part of October 1933, and in the. latter part of November work was commenced on the gutters. When the gutters were cleaned of foreign matter, it was discovered that many of the joints were broken. This condition was not known to the plaintiffs at the time the contract was entered into because of the foreign matter which had accumulated in the gutters and covered and concealed the broken joints. The *239 agents of the defendant were aware that many of these joints had become loose and required soldering. Paragraph 39 of the specifications provides:
Gutters: All existing gutters which are not securely fastened in place or gutters not draining properly shall be rehung in an approved manner.
All hangers, straps, etc., needed properly to rehang the gutters shall be provided by the Contractor.
In Paragraph 38, providing for flashings and counter-flashings, it is specifically provided that they shall be re-soldered or repaired as approved. There is a provision in the contract providing for new gutters to be furnished and installed, as required by the defendant, not to exceed a certain number of feet. When the work was commenced on the gutters it was found that their condition was so poor and repairs so necessary that the provision for new gutters was put into effect by the defendant and the amount of lineal feet provided for in Alternate Bid “B” was exhausted. When this point was reached, the question arose as to whether the plaintiffs were required to resolder all the joints on the building or only those joints where new gutters were ordered to be placed.
The plaintiffs had soldered a few old joints but orally protested on or about the middle of December 1933, that soldering all the broken joints was not within the provisions of the contract. The contracting officer construed the contract to mean that resoldering of all joints which were broken was within its terms. On December 26, 1933, the plaintiffs entered a formal written protest. To this protest the defendant replied denying the plaintiffs’ contention and asserting that'resoldering of the broken joints of the entire building was within the provisions of the contract. It is true that the protest filed by the- plaintiffs is somewhat equivocal and the reply by the defendant takes advantage of this ambiguous wording of the letter. But, when it is taken into consideration that the contracting officer was well aware of the oral protest of the plaintiffs and the sole question under consideration was the resoldering of these broken joints, and that the letter started off with “we desire to formally enter our protest,” it is quite clear that the play on *240 the word “method” used in the letter of the contracting officer will not avail to frustrate the intent and purpose of this letter which was to formally protest against the soldering of the broken joints of the old gutters which the plaintiffs believed was outside of the terms of the contract and which the defendant had decided, in passing on the oral protest, was within the terms of the contract. It is our belief that this is a sufficient protest to bring the plaintiffs within the protesting terms of the contract.
When the contracting officer made his determination that the resoldering of all the broken joints was within the provisions of the contract, the plaintiffs continued to perform the work and resoldered the broken joints at an extra cost of $2,556.01. The resoldering of the joints between the old gutter sections was completed February 12, 1934.
■ The contract was completed April 2, 1934. The plaintiffs were paid the contract pricé. On April 5, 1934, the plaintiffs submitted to the contracting officer a claim for extra compensation of $132.32 for the cost of the new nailing strips and their installation and a claim of $2,556.01 for the cost of soldering the seams of the old gutters. The contracting officer denied these claims. No appeal was taken by the plaintiffs to the Secretary of the Interior from this decision of the contracting officer.
An examination of the contract and specifications shows that there is no provision made for the resoldering of the old joints. The sheds on these buildings were' extensive ones with á long length of gutter and the sections were approximately eight feet' in length. Over two thousand joints were involved. The work of resoldering these joints was extensive and expensive. It seems only reasonable that some provision should have been made in the contract or specifications, had this work been contemplated under its terms. The poor condition of these joints was known to the agents of the defendant before the contract was executed but was unknown to the plaintiffs. Provision is made only for resoldering the defective seams in flashings and counter flashings. This provision in regard to flashings would not be necessary were resoldering of all joints covered by the contract. We cannot read into the contract something that is not there. Resolder- *241 ing these joints was outside of the contract, extra work ordered by the contracting officer, and performed by the contractor, and the Government has received the benefit and should pay for it. The plaintiffs are entitled to recover the sum of $2,556.01.
The new nailing strips were so clearly outside the terms of the contract that no discussion is necessary and the plaintiffs are entitled to recover the sum of $132.32 for the material furnished.
Judgment will be entered for the plaintiffs in. the sum of $2,688.33. It is so ordered.
Williams, Judge; Littleton, Judge; GREEN, Judge; and Booth, Chief Justice, concur.'